# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

RYAN DEVELOPMENT COMPANY, L.C.
d/b/a/ Agriboard Industries

    *Plaintiff*,

vs.

INDIANA LUMBERMENS MUTUAL
INSURANCE COMPANY,

    *Defendant.*

Case No. 09-1264-EFM

## MEMORANDUM AND ORDER

Plaintiff Ryan Development Company, L.C., d/b/a Agriboard Industries, filed suit contending that Defendant Indiana Lumbermens Mutual Insurance Company breached its insurance contract and owed Plaintiff approximately $2.4 million for covered losses. The matter was tried to a jury over four days. At the close of evidence, Defendant moved for judgment as a matter of law which the Court denied. After deliberating, the jury rendered a verdict in favor of Plaintiff in the amount of $2,261,166.00. The matter now comes before the Court on Defendant's Renewed Motion for Judgment as a Matter of Law, or in the alternative, Motion for New Trial (Doc. 84). For the following reasons, the Court denies Defendant's motion.

### I. Standard of Review

Defendant renews its motion for judgment as a matter of law, or in the alternative, moves for a new trial. Federal Rule of Civil Procedure 50(a)(1) provides that judgment as a matter of law is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that

a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." "Judgment as a matter of law [under Rule 50(a)] is only appropriate if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position."[1]

A motion for new trial pursuant to Fed. R. Civ. P. 59(a) is committed to the sound discretion of the trial court.[2] They are "not regarded with favor and should only be granted with great caution."[3] In reviewing a motion for a new trial, the court must view the evidence in the light most favorable to the prevailing party.[4] "The party seeking to set aside a jury verdict must demonstrate trial errors which constitute prejudicial error or that the verdict is not based on substantial evidence."[5] The court should "ignore errors that do not affect the essential fairness of the trial."[6]

## II. Discussion

### A.     Improper Closing Argument

*1. Texas Endorsement*

In seeking a new trial, Defendant first asserts that Plaintiff's counsel's argument during closing was improper because he referenced the Texas Endorsement of the insurance policy and stated that "lost income" was not personal property under the Texas Endorsement. Defendant

---

[1] *Strickland v. United Parcel Service, Inc.*, 555 F.3d 1224, 1228 (10th Cir. 2009) (internal quotations and citations omitted).

[2] *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984); *Hinds v. Gen'l Motors Corp.*, 988 F.2d 1039, 1046 (10th Cir. 1993).

[3] *United States v. Kelley*, 929 F.2d 582, 586 (10th Cir. 1991).

[4] *Griffin v. Strong*, 983 F.2d 1544, 1546 (10th Cir. 1993); *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1156 (10th Cir. 2006).

[5] *White v. Conoco, Inc.*, 710 F.2d 1442, 1443 (10th Cir. 1983).

[6] *McDonough Power Equip.*, 464 U.S. at 553.

contends that Plaintiff's argument was improper because Plaintiff did not have any witness testify about the insurance policy and the only evidence in the record was the insurance policy itself. As such, Defendant asserts that Plaintiff should not have explained or interpreted the policy in closing. In addition, Defendant contends that Plaintiff's statement that "lost income" is not personal property under the Texas endorsement is a misstatement of law.

As an initial matter, Defendant did not contemporaneously object to Plaintiff's reference to the Texas endorsement nor to Plaintiff's characterization that lost income was not personal property. "Counsel . . . cannot as a rule remain silent, interpose no objections, and after a verdict has been returned seize for the first time on the point that the comments to the jury were improper and prejudicial. A party who waits until the jury returns an unfavorable verdict to complain about improper comments during opening statement and closing argument is bound by that risky decision and should not be granted relief."[7] If a party fails to timely object during closing argument as to the impropriety of opposing counsel's statements, the party must later demonstrate clear error.[8] To demonstrate plain error, the party who failed to object has the burden to show "there is (1) error (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."[9]

Here, Defendant cannot meet its burden in demonstrating clear error. As to Defendant's argument that no witness testified about the insurance policy and therefore Plaintiff's counsel's argument was improper, the record demonstrates that Plaintiff's first witness, Randy Thompson,

---

[7] *Glenn v. Cessna Aircraft Co.*, 32 F.3d 1462, 1465 (10th Cir. 1994) (internal quotations and citations omitted).

[8] *See Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1422 (10th Cir. 1991).

[9] *United States v. Solon*, 596 F.3d 1206, 1212 (10th Cir. 2010) (citation omitted).

Defendant's claim specialist in this case, discussed certain provisions of the policy. Specifically, he discussed the policy's 30-day timeframe for Defendant to make payment after receiving a satisfactory proof of loss. In addition, Thompson discussed the Texas amendatory endorsement, included with the policy, requiring Defendant to do certain things within 15, 30, and 45 days. The Texas endorsement was showed to the jury while Thompson was testifying. As such, the Texas endorsement was discussed during trial, and Plaintiff's closing argument was not the first time the jury heard about it.

Defendant also contends that Plaintiff's counsel engaged in improper argument during closing because he stated that "lost profits" were not "personal property" under the Texas endorsement. The Texas endorsement provides, "A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. The provisions of this article shall not apply to personal property." In reading this provision, Plaintiff's counsel stated that the clause meant that any of Plaintiff's claims that were not personal property, such as loss of income, immediately became a liquidated demand for the entire amount of policy limits.

Defendant argues that nowhere in this liquidated damages provision does it articulate that it includes claims for "lost income." In addition, Defendant apparently reads this endorsement to only cover "real property" because Defendant argues that "lost income" is not "real property" and therefore not covered by the endorsement. However, the endorsement does not address "real property" and simply states that "personal property" is not covered by the endorsement. If the endorsement was meant to solely apply to "real property," Defendant could have drafted the provision that way.

Defendant argues that it is clear from the definitions included in the policy that "personal property" includes "lost profits," and the endorsement only covers "real property" that is tied to the land. Based on this argument, Defendant contends that Plaintiff's counsel's comment was a misstatement. However, as Defendant itself points out, there are no definitions in the policy as to the meaning of "personal property" or "real property." Because neither "personal property" or "real property" are defined in the policy, the Court cannot concur with Defendant's reasoning that the Texas amendatory endorsement only covers real property.

Regardless of whether "lost income" is considered "personal property," the Court instructed the jury that counsel's arguments were not evidence. There was a jury instruction which provided that the obligation of an insurance company is governed by the provisions of the policy, and the words used in the policy are to be read and understood in their ordinary and usual meaning. Presumably, the jury did its job and read the provisions of the insurance policy in deciding whether Plaintiff was entitled to damages. Furthermore, it is speculation that the jury awarded Plaintiff "lost profits" based on Plaintiff's brief comment regarding the Texas endorsement. As Defendant did not object to Plaintiff's comments during closing, the Court is not convinced that this brief comment constitutes such plain error affecting substantial rights and the fairness or integrity of judicial proceedings. Accordingly, Defendant's motion for new trial on this ground is denied.

### 2. *McInteer Comment*

Defendant also contends that Plaintiff's counsel erred with his statement relating to Jack McInteer during Plaintiff's rebuttal closing argument. During closing, Defendant asserted that Plaintiff did not meet its burden of proof in proving its case and should question why Plaintiff did not call corporate counsel to testify if corporate counsel was the one making the decisions as to how

to handle the claim. In rebuttal, Plaintiff stated that Defendant had corporate counsel, Jack McInteer, listed as a witness, and Defendant said that it did not need him to testify. Defendant objected that it was not evidence, and the Court sustained Defendant's objection. Plaintiff then asserted that Defendant presumably did not call McInteer because it did not want McInteer explaining all the problems Plaintiff had with the insurance company.

Defendant's basic argument is that Plaintiff's remarks confused the jury procedurally as to whether it was required to call McInteer as a witness, and Plaintiff's statements attempted to shift the burden of proof back to Defendant. Although Defendant is correct that Defendant's listing of Jack McInteer as a witness had no bearing on its ability to call him, the Court sustained Defendant's objection and stated that the jury can only consider the evidence that was entered in the case. As to Defendant's argument that Plaintiff attempted to shift the burden of proof to Defendant, Defendant discussed this issue in detail during closing. Defendant argued to the jury that Plaintiff was trying to shift the burden of proof on to Defendant, but cautioned the jury to make sure Plaintiff met its burden of proof. Furthermore, a jury instruction instructed the jury that Plaintiff had the burden of proof to establish by a preponderance of the evidence its claim that Defendant breached the insurance contract. As such, the Court concludes that this minor procedural issue did not prejudice Defendant so much as to warrant a new trial and denies Defendant's motion on this ground.

### B.     Jury Instruction

Defendant's next point of error involves two instructions given to the jury. First, Defendant contends that the Court erred when it included jury instructions, Instructions 12 and 13, about ambiguity of an insurance contract. In addition, Defendant asserts that Plaintiff used the ambiguity

instructions to confuse the jury.

With respect to the inclusion of the ambiguity instructions, Defendant argues that no witness testified about the policy or the meaning of the terms of the insurance policy with the exception of Plaintiff's counsel in closing. Defendant contends that because no witness testified about the meaning of the terms of the insurance policy, there was no evidence of ambiguity in the policy, and the Court should therefore not have included ambiguity instructions.

As noted above, Randy Thompson, Defendant's claim specialist discussed certain provisions of the policy, including time requirements under the policy and time requirements contained in the Texas endorsement. As such, because there was testimony by a witness as to provisions in the insurance contract and the endorsement, and the possibility of conflicting terminology between the policy and the endorsement, the jury instructions were not in error.

As to Defendant's contention that Plaintiff used the instruction to confuse the jury, Plaintiff only specifically referenced Instruction 13 which informed the jury that when there is a conflict between the policy and the endorsements, the endorsements are controlling. Again, as noted above, Defendant's representative testified both about policy provisions in the contract and the Texas endorsement included within the contract. As such, this instruction was tailored to the facts of the case. Defendant's motion for new trial on this ground is denied.

### C. Improper Expert Testimony

Defendant next argument is that several of Plaintiff's witnesses should not have been allowed to testify because their testimony was not lay opinion but expert testimony. Defendant first raised the issue in its motion in limine before trial asserting that expert testimony from Plaintiff's accountants should be precluded because they were not previously disclosed as experts. The Court

granted Defendant's motion in limine agreeing that these witnesses could not testify as experts but noting that they could testify as fact witnesses as they were the individuals who gathered and compiled the information to submit to Defendant supporting Plaintiff's insurance claim.

At the beginning of trial, Defendant raised an objection to one of Plaintiff's exhibits arguing that it was improper expert testimony. Plaintiff asserted that it was every proof of loss, and supporting document, submitted to Defendant, and Plaintiff's accountants prepared the document. The Court overruled Defendant's objection determining that Plaintiff's accountant testimony was merely a compilation of the items submitted in support of the proofs of loss and only involved a mathematical computation. During trial, Defendant also raised a continuing objection to Plaintiff's accountants' witness testimony arguing that it was improper expert testimony.

Federal Rule of Evidence 701 provides that if a witness is not testifying as an expert, the witness' testimony is limited to those opinions "which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." "When the subject matter of proffered testimony constitutes 'scientific, technical, or other specialized knowledge,' the witness must be qualified as an expert under Rule 702."[10] There is no distinction "between expert and lay *witnesses*, but rather between expert and lay *testimony*."[11]

---

[10] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004) (citing Fed. R. Evid. 702).

[11] Fed. R. Evid. 701 (advisory committee notes) (emphasis in original).

Defendant directs the Court to a recent Tenth Circuit opinion, *James River Insurance Co. v. Rapid Funding, LLC*,[12] in which the Circuit determined that the district court erroneously admitted a witness's valuation testimony as lay opinion because it was actually expert opinion. The testifying witness was the owner of a complex of apartment buildings, had experience in real estate, and had personally inspected the property.[13] The witness' apartment complex burned down, and he submitted an insurance claim that the building had an actual cash value of approximately $4.4 million.[14] At trial, the district court did not allow his testimony under Fed. R. Evid. 702 or *Daubert* because his method was not sufficiently reliable but allowed it as lay opinion testimony under Fed. R. Evid. 701.[15] The district court gave a limiting instruction to the jury that the witness' testimony was lay, and not expert, opinion.[16]

In making the determination that the witness' testimony was expert opinion, rather than lay opinion, the Circuit noted four factors. First, the Circuit determined that the witness did not qualify under Fed. R. Evid. 701 because his testimony was not common and involved technical judgment in determining depreciation and deterioration.[17] The Circuit discussed the difference between common observations, i.e., opinion testimony, and technical judgments, i.e., expert testimony.[18] It

---

[12]--- F. 3d ---, 2011 WL 4860188 (10th Cir. Aug. 29, 2011).

[13]*Id*. at *3.

[14]*Id*. at *2-3. The insurance company's expert appraiser determined that the value of the complex was less than zero.

[15]*Id.* at *3-4.

[16]*Id.* at *4.

[17]*Id*. at *6-7.

[18]*Id.* at *7.

concluded that simple mathematical, statistical determinations constituted lay opinion testimony.[19] Testimony based on sophisticated growth rates and S-curves fell under expert testimony as it involved specialized knowledge that could not be reached by an ordinary person.[20]

Second, the witness' calculations were based in part on his professional experience in real estate.[21] Third, the witness relied on an outside expert's 1,525 page technical report using specialized accounting calculations in determining the valuation.[22] Finally, the Circuit noted that "the Federal Rules of Evidence generally consider landowner testimony about land value to be expert opinion."[23] The Circuit found Fed. R. Evid.701's advisory committee's note allowing business owners to testify as to the value of their business inapplicable because the witness was not testifying as to the value of the business or projected profits but instead was opining about property value.[24] Accordingly, because the witness' testimony was based on specialized and technical knowledge, the Circuit determined that the district court abused its discretion in allowing the witness's valuation testimony as lay testimony.

In this case, in contrast to the witness in *James River*, Plaintiff's accountants' testimony did not involve technical judgment. Instead, the testimony was based on their personalized knowledge of the company, including Plaintiff's books, documents, and tax returns. These witnesses compiled the information and documents sent to Defendant in support of the proofs of loss submitted.

---

[19]*Id.* (discussing *Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114 (10th Cir. 2005)).

[20]*Id.* (discussing *Lifewise*, 374 F.3d 917).

[21]*Id.*

[22]*Id.* at *8.

[23]*Id.*

[24]*Id.*

Although they were accountants, they did not testify as to special accounting procedures or complicated, specialized methods used to calculate the loss. They simply testified that they compiled information taken from Plaintiff's documents, such as the total amount of payroll paid out over several months, and input this data into a form provided by Defendant. The computation involved simple mathematical equations.

To the extent the testimony in this case may have involved testimony by the accountant as to lost income, this also contrasts with *James River* in which the testimony related to property valuation. The Federal Rules of Evidence consider property valuation testimony expert opinion.[25] Several courts have determined that "a lay witness accountant may testify on the basis of facts or data perceived in his role as an accountant based on his personal knowledge of the company."[26] As noted above, Plaintiff's accountants had personal knowledge of the business, and they performed straightforward calculations. As such, the Court denies Defendant's motion on this ground because Plaintiff's accountants did not provide expert testimony.

### D. Verdict Not Supported by the Evidence

Finally, Defendant asserts that it is entitled to a new trial because the evidence did not support the jury verdict. "If a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence."[27] Defendant makes several arguments, including that Plaintiff did not establish

---

[25] *See* Fed. R. Evid. 702 advisory committee's note.

[26] *First Annapolis Bancorp, Inc. v. United States,* 72 Fed. Cl. 204, 207 (2006) (citing *Teen-Ed, Inc. v. Kimball Int'l*, 620 F.2d 399, 403-04 (3d Cir. 1980)).

[27] *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 762 (10th Cir. 2009) (internal quotation and citation omitted).

a breach of contract, that the damages awarded by the jury were not supported by evidence,[28] and that the jury erroneously interpreted provisions in the insurance contract. The jury was presented with the insurance contract, testimony from multiple witnesses regarding the information submitted to Defendant to support its claim under the insurance policy, and testimony from witnesses as to Defendant's failure to pay Plaintiff for its claims. A detailed re-weighing of the arguments and evidence from trial is unnecessary as the Court is not convinced that the jury's verdict was decidedly and overwhelmingly against the weight of the evidence. Accordingly, the Court denies Defendant's motion for a new trial on the basis that the evidence did not support the verdict.

**IT IS ACCORDINGLY ORDERED** that Defendant's Renewed Motion for Judgment as a Matter of Law, or in the alternative Motion for New Trial (Doc. 84), is **DENIED**.

**IT IS SO ORDERED.**

Dated this 25th day of October, 2011.

*/s/ Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[28] Defendant asserts that the jury awarded the full request for $1.8 million in lost profits. It also contends that coverage for valuable papers was *presumably* one of the areas for which the jury awarded damages. Primarily, Defendant argues that the jury improperly awarded Plaintiff lost profits by using a restoration period of 12 months instead of 5-6 months. The jury's verdict did not identify specific areas for which it found damages, but instead, the verdict form contained one figure. In addition, the jury did not award the full amount of damages requested from Plaintiff. As such, Defendant's breakdown of how, what categories, and what timeframe the jury used to determine damages, appears to be speculation.